IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| PATRICK KENNEALLY, in his official capacity as McHENRY COUNTY STATE'S ATTORNEY and on behalf of the PEOPLE OF THE STATE OF ILLINOIS, and McHENRY COUNTY, body politic and corporate, <br><br> Plaintiffs, <br><br> v. <br><br> KWAME RAOUL, in his official capacity as Illinois Attorney General, and GOVERNOR J.B. PRITZKER, in his official capacity as Governor of the State of Illinois, <br><br> Defendants. | No. 3:23-cv-50039 |

**STATEMENT IN RESPONSE TO THE COURT'S MINUTE ENTRY**

On March 17, the Court issued a minute entry raising questions about the undersigned's conduct and setting a status for April 3. ECF 13. The undersigned regrets that his conduct has prompted this Court's inquiry and submits this response in advance of the status to address the Court's questions.

On January 10, the Governor of Illinois signed into law the Protect Illinois Communities Act, which, among other things, modified the Criminal Code of 2012 to include prohibitions on the sale and possession of assault weapons and large capacity ammunition feeding devices. *See* 720 ILCS 5/24-1.9, 24-1.10. These new provisions, some of which became effective immediately, precipitated a flurry of litigation in both state and federal court, including this lawsuit, which was filed in state court on January 26 by the State's Attorney of McHenry County. ECF 1-1. Because the State's Attorney alleges the new prohibitions on assault weapons

1

and large capacity ammunition feeding devices violate the Second Amendment to the United States Constitution, *e.g., id.* ¶ 9, and because this same claim had already been raised in several other lawsuits pending in federal court, *see Harrell v. Raoul*, No. 3:23-cv-00141 (S.D. Ill.) (filed Jan. 17, 2023); *Langley v. Kelley*, No. 3:23-cv-00192 (S.D. Ill.) (removed Jan. 23, 2023); *Barnett v. Raoul*, No. 3:23-cv-00209 (S.D. Ill.) (filed Jan. 24, 2023); *Fed. Firearms Licensees of Ill. v. Pritzker*, No. 3:23-cv-00215 (S.D. Ill.) (filed Jan. 24, 2023); *Nat'l Ass'n for Gun Rights v. City of Naperville*, No. 1:22-cv-04775 (N.D. Ill.) (complaint amended Jan. 24, 2023); *Herrera v. Raoul*, No. 1:23-cv-00532 (N.D. Ill.) (filed Jan. 27, 2023), the undersigned, on behalf of Defendants, removed the State's Attorney's lawsuit to federal court the following day, ECF 1.

At the time, the undersigned believed in good faith that the State's Attorney had standing to bring his Second Amendment claim and therefore that this Court possessed subject matter jurisdiction over the case. Among other reasons, the undersigned had recently argued that the State's Attorney and dozens of his colleagues lacked standing in state court to challenge the bail reform law commonly known as the SAFE-T Act. That argument was rejected by the circuit court, which pointed in particular to the state's attorneys' "oath to uphold and defend the Illinois Constitution" as a basis for finding these officials represent "not only their offices but the citizens of their respective counties" and therefore "are uniquely qualified to challenge unconstitutional legislation in a way the average citizen cannot." *See* Memorandum of Decision at 12-15, *Rowe v. Raoul*, No. 2022 CH 16 (Kankakee Cty. Dec. 28, 2022), attached as Exhibit 1. The circuit court further found "[t]he individual State's Attorneys who have brought these actions are regulated by [the challenged] provisions and have a clear interest in their constitutionality, as well as a cognizable injury should they be tasked with enforcing an unconstitutional act." *Id.* Although defendants appealed the merits of the circuit court's judgment

2

directly to the Illinois Supreme Court, they did not renew the argument that the state's attorneys suffered no distinct and palpable injury and therefore lacked standing to sue. *See* Brief of Defendants-Appellants, *Rowe v. Raoul*, No. 129248 (Ill. Jan. 26, 2023), attached as Exhibit 2.[1]

In this suit, the State's Attorney alleges that his office authorizes him to litigate on behalf of the public interest, ECF 1-1 ¶¶ 5-6, 8, that he is regulated by the challenged provisions, and that he is injured by the requirement to enforce an unconstitutional law, *id.* ¶ 9. These are similar to the allegations found sufficient to constitute a cognizable injury under state standing requirements in *Rowe*. And the standing inquiries under both state and federal law are identical in requiring, among other things, a "distinct and palpable" injury "to a legally cognizable interest." *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Greer v. Ill. Housing Dev. Auth.*, 524 N.E.2d 561, 574-75, 122 Ill. 2d 462, 492-93 (1988). For these reasons, at the time of removal, the undersigned concluded the State's Attorney had standing to pursue his constitutional challenge in this case too.

But the question of state's attorneys' standing to raise constitutional challenges to state laws is complex, necessarily depends on the particular circumstances of a given case, and in any event is not definitively resolved one way or the other in state or federal court. Although *Rowe* holds state's attorneys who are required to enforce or adhere to a law they believe is unconstitutional have suffered sufficient injury for standing purposes, this Court's decision in *Prim v. Raoul*, No. 3:20 cv 50094, 2021 WL 214641, at *2-*3 (N.D. Ill. Jan. 21, 2021), attached as Exhibit 3, holds sheriffs who allege they are subject to the same requirement have not.

---

[1] Defendants did continue to make the separate arguments, also referred to in terms of standing, that the state's attorneys could not pursue their challenges under the bail and crime victims' rights provisions of the Illinois constitution because those provisions grant rights only to criminal defendants and crime victims, respectively. *See* Brief of Defendants-Appellants at 25-28, 29-30, *Rowe v. Raoul*, No. 129248 (Ill. Jan. 26, 2023), attached as Exhibit 2.

Further, as in *Prim*, the State's Attorney's allegation that he is *required* to comply with the allegedly unconstitutional prohibitions on the sale and possession of assault weapons and large capacity ammunition feeding devices "is based on a false premise." *Id.* at *2. Despite the State's Attorney's claim that he finds himself "in an impossible ethical quandary of enforcing new, unconstitutional criminal offenses against citizens who are lawfully exercising their constitutional rights," ECF 1-1 ¶ 9, in fact state's attorneys in Illinois have exclusive and unreviewable discretion to initiate criminal prosecutions, *e.g., People ex rel. Daley v. Moran*, 445 N.E.2d 270, 272, 94 Ill. 2d 41, 45-46 (1983); thus, it is entirely up to the State's Attorney whether he chooses to enforce the new sections of the Criminal Code of 2012 challenged here.

During the five weeks between January 27 (when Defendants removed this suit to federal court) and March 3 (when Defendants filed their since withdrawn motion for judgment on the pleadings), multiple lawyers in the Office of the Attorney General further researched and discussed these issues and ultimately determined that it was necessary to challenge the State's Attorney's standing to bring his Second Amendment claim. And although Defendants ultimately withdrew their motion for judgment on the pleadings (more on the reason why in the next paragraph), even then Defendants stood by their arguments that the State's Attorney lacks standing. *See, e.g.,* ECF 12 at 1 ("Defendants believe that Plaintiffs lack standing to bring their Second Amendment claim in either federal or state court."); *id.* at 2 ("Because this Court maintains an independent obligation to ensure subject matter jurisdiction over this action at all times, Defendants repeat their arguments below as to why Plaintiffs lack Article III standing."); *id.* at 3 ("Below Defendants restate their arguments as to why Plaintiffs lack Article III standing."). If there is any lingering doubt, Defendants provide definitive clarification here: They believed in good faith that the State's Attorney had standing to bring his Second Amendment

4

claim when they removed this suit to federal court, but subsequent research and discussion caused them to change their view, and they now believe in good faith that the State's Attorney lacks standing to bring that claim. *See, e.g., BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 551 (7th Cir. 2002) ("we acknowledge that jurisdictional problems may be overlooked in all innocence").[2]

So why did Defendants withdraw their motion for judgment on the pleadings? It was not because they were waffling on their standing arguments but rather because, after filing the motion, they came to understand the *relief* they had requested—a judgment dismissing the action—was unavailable. As they explained in their notice withdrawing the motion, "[b]ecause this is a removed case, [a judgment] is not appropriate under Seventh Circuit precedent. If this Court agrees that Plaintiffs lack standing under federal law, then the Court must remand this case to state court, where Defendants would seek dismissal under state law standing jurisprudence." ECF 12 at 1 (citing *Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018)). Put another way, the purpose of Defendants' withdrawing their motion was not to alter their arguments on standing but rather to alter the relief requested if the Court agreed with those arguments—remand, rather than dismissal.[3]

---

[2] The State's Attorney also asserts a Second Amendment claim on behalf of McHenry County, which is not alleged to have suffered any injury and in any event does not have a right to bear arms. ECF 12 at 5-6.

[3] For this reason, Defendants do not believe the Court's standing order on removed cases requires sanctions. Defendants do not "*simultaneously* assert and challenge the Court's jurisdiction" (emphasis added); rather, they previously asserted jurisdiction when this case was removed and then subsequently changed their view and challenged jurisdiction. Further, the standing order provides for monetary sanctions only "[i]f the defendants waste the Court's judicial resources by *opposing* remand" (emphasis added). Here, by contrast, Defendants have said "the Court *must* remand this case to state court" if it "agrees that Plaintiffs lack standing under federal law." ECF 12 at 1 (emphasis added). But because of the fatal consequences that a *sua sponte* remand for lack of standing could have on the State's Attorney's ability to maintain this action in state court, where the relevant inquiry is substantially the same as it is in federal court, Defendants continue to believe the State's Attorney has a right to be heard in this Court if he wishes to argue that he does have standing. *Id.* at 2.

In hindsight, the undersigned regrets committing two independent errors in the handling of this case. *First*, the undersigned's analysis in late January regarding the State's Attorney's standing turned out to be incorrect. *Second*, the undersigned's conclusion in early March that this Court could dismiss the State's Attorney's suit for lack of standing also turned out to be incorrect. The Court is correct to be frustrated by these events; the undersigned is too.

But what has occurred here simply does not reflect the "callous disregard for governing law or the procedures of the court that usually justifies the imposition of Rule 11 sanctions." *Allison v. Dugan*, 951 F.2d 828, 834 (7th Cir. 1992). For starters, the undersigned took prompt action to correct both of his errors—the first by raising the State's Attorney's lack of standing at the earliest opportunity, ECF 9, and the second by withdrawing the improper request for judgment rather than remand, ECF 12. It is inevitable that lawyers will make mistakes. Imposing sanctions when lawyers voluntarily disclose their mistakes and take steps to correct them could discourage those lawyers from stepping forward to correct the record, which is the opposite of what Rule 11 encourages. *See* Fed. R. Civ. P. 11(c)(2) (safe harbor provision); *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 886 (7th Cir. 2017) (safe harbor provision eliminates "unintended consequence" that "threat of Rule 11 sanctions" disincentivizes lawyers to "abandon a questionable contention lest that be viewed as evidence of a violation").[4] The issue of the State's Attorney's standing will now be resolved at the outset of this litigation, before the Court has made any substantive rulings, rather than months or years down the line.

Further, the plain language of Rule 11(b) shows it is inapplicable here. The only

---

[4] Although the safe harbor provision does not apply when a court on its own initiative orders a lawyer "to show cause why conduct specifically described in the order has not violated Rule 11(b)," Fed. R. Civ. P. 11(c)(3), any "corrective action" by that lawyer "should be taken into account in deciding what—if any— sanction to impose if, after consideration of the litigant's response, the court concludes that a violation has occurred," *id.* advisory committee's notes to the 1993 amendments. Further, show cause orders under Rule 11(c)(3) "will ordinarily be issued only in situations that are akin to a contempt of court." *Id.*

6

potentially relevant subsection is (2), which requires an attorney to "certif[y] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." As discussed above, the question of the State's Attorney's standing is complex and not definitively resolved in either state or federal court. While Defendants now believe the State's Attorney lacks standing to bring his Second Amendment claim, they expect he will vigorously contest that conclusion based on arguments that are far from frivolous and likely similar to those found persuasive by the state circuit court in *Rowe*, which also once persuaded the undersigned.[5] Simply put, there are potentially meritorious arguments on both sides of this issue, which means all of them fall comfortably within the bounds of Rule 11(b)(2). *See Hartmarx Corp. v. Abboud*, 326 F.3d 862, 868 (7th Cir. 2003) (sanctions are unwarranted when a party "was taking a reasonable legal position" on "a close question of law").

      Two remaining issues require addressing. *First*, the undersigned's two errors were regrettable mistakes but nothing more. Put another way, these errors were not committed intentionally in service of an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). This is one of seven cases in federal court raising the same Second Amendment attack on provisions of the Criminal Code of 2012 restricting the sale and possession of assault weapons and large capacity ammunition feeding devices. Those issues will have to be resolved one way or the other, and Defendants gain no benefit by injecting additional issues into this particular dispute; this is not a case of deep-

---

[5] The State's Attorney's motion for a preliminary injunction, ECF 5, filed more than two weeks after the undersigned removed this case, ECF 1, implies the State's Attorney *does* believe this Court has jurisdiction over his claim. *See, e.g., Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020).

pocketed defendants who might benefit from litigation delays. Rather, it is precisely because the undersigned and his colleagues take seriously their duties as officers of the court that they promptly chose to question the State's Attorney's standing as soon as their additional research and discussion caused them to conclude that they must. *See BEM*, 301 F.3d at 551 (it "is improper, indeed sanctionable, and quite possibly unethical" for a lawyer "deliberately to avoid raising the issue" of subject matter jurisdiction).

*Second*, more than a dozen lawsuits have been filed challenging all or some of the Protect Illinois Communities Act; this includes not only the seven Second Amendment cases noted above but also four state court cases raising separate claims under the state constitution. *See, e.g., Accuracy Firearms, LLC v. Pritzker*, --- N.E.3d ----, 2023 IL App (5th) 230035, ¶¶ 7-10, attached as Exhibit 4. The undersigned is the lead counsel representing the Governor and Attorney General in the circuit court in the state court cases, which have resulted in several temporary restraining orders, *see, e.g., id.*, ¶¶ 1, 67, and a final judgment, *see* Final Judgment, *Caulkins v. Pritzker*, No. 2023 CH 3 (Macon Cty. Mar. 3, 2023), attached as Exhibit 5. The undersigned offers this background not to excuse his errors but rather to provide context for the circumstances in which they occurred. Both of the undersigned's errors came to his attention after he and his colleagues were able to devote additional attention to the question of the State's Attorney's standing and the procedure Defendants are required to follow if he turns out to lack it. It is regrettable that this additional attention did not occur before the undersigned removed this case and filed the motion for judgment on the pleadings. But, respectfully, these errors do not rise to the level of warranting sanctions—particularly when the undersigned corrected both errors on his own initiative and at the earliest opportunity, before the Court or State's Attorney was required to expend any additional time or resources.

The undersigned looks forward to discussing these matters further at the April 3 status.

Dated: March 30, 2023 	Respectfully submitted,

/s/ Darren Kinkead
Darren Kinkead, ARDC No. 6304847
Office of the Attorney General
100 West Randolph Street
Chicago, IL 60601
(773) 590-6967
Darren.Kinkead@ilag.gov