IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| PATRICK KENNEALLY, in his official capacity as McHENRY COUNTY STATE'S ATTORNEY and on behalf of the PEOPLE OF THE STATE OF ILLINOIS, and McHENRY COUNTY, body politic and corporate,<br><br>Plaintiffs,<br><br>v.<br><br>KWAME RAOUL, in his official capacity as Illinois Attorney General, and GOVERNOR J.B. PRITZKER, in his official capacity as Governor of the State of Illinois,<br><br>Defendants. | No. 3:23-cv-50039 |

### DEFENDANTS' BRIEF REGARDING THE *BEVIS* DECISION

Defendants submit this brief in response to the Court's December 11, 2023 order granting the parties leave to file a brief addressing the effect of *Bevis v. City of Naperville*, 85 F. 4th 1175 (7th Cir. 2023), on plaintiffs' pending motion for a preliminary injunction. Because the claims here are identical, the motion should be denied.

**Procedural Background.** On January 2023, the Governor signed into law the Protect Illinois Communities Act, Pub. Act 102-1116 (2023) ("the Act"). In part, the Act restricts the sale and possession of assault weapons and large capacity magazines. 720 ILCS 5/24–1.9, –1.10. Within weeks, there were five actions in federal court against state officials challenging the Act on the basis of the Second Amendment. In a sixth preexisting action against local officials regarding a Naperville ordinance, plaintiffs added a claim against the Act.

In one of the new suits, *Harrel v. Raoul*, No. 23-cv-141 (S.D. Ill.), McHenry County State's Attorney Patrick Kenneally was sued along with state officials. Nine days later, Mr. Kenneally copied many of the allegations against him and filed them as a complaint in state court. Upon seeing the *Harrel* allegations and the same Second Amendment claim as the other federal cases, Defendants removed this case the next day. Dkt. 1.

In all seven actions, plaintiffs filed motions for preliminary injunctive relief, seeking to enjoin the Act's provisions regarding assault weapons and large capacity magazines on the basis of their Second Amendment claims. On February 17, 2023, Judge Kendall denied the motion in *Bevis v. City of Naperville*, 627 F.Supp.3d 1052 (N.D. Ill.). On April 25, Judge Jenkins denied the motion in *Herrera v. Raoul*, No. 23-cv-532, 2023 WL 3074799 (N.D. Ill.). On April 28, Judge McGlynn granted the motions in the four cases he consolidated under *Barnett v. Raoul*, No. 23-209, 2023 WL 3160285 (S.D. Ill.), which included *Harrel*. The three orders were promptly appealed. The Seventh Circuit entered a stay of the Southern District's injunction pending resolution of the interlocutory appeals, the parties briefed the appeals on expedited schedules, and the court consolidated the six cases for oral argument and decision.

On November 3, the Seventh Circuit issued a decision affirming the Northern District judges' denial of preliminary injunctive relief and vacating the Southern District judge's order. *Bevis*, 85 F. 4th 1175. The court declined to rehear the appeals *en banc*, and the U.S. Supreme Court has twice denied emergency applications for injunctive relief against the Act.

**The *Bevis* Decision**. In its decision, the Seventh Circuit concluded that plaintiffs were not likely to succeed on the merits of their claims against the Act. The court set out the two-part standard from *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), which applies to Second Amendment claims. The Seventh Circuit explained:

2

> [T]he *Bruen* Court elaborated on the test that *Heller* requires. First, it said, the trial court must decide whether 'the Second Amendment's plain text covers an individual's conduct.' If so, then 'the Constitution presumptively protects that conduct.' The analysis then moves to the second step, which calls on the 'government [to] justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

*Bevis*, 85 F.4th at 1191 (quoting *Bruen*) (internal citations removed).

At *Bruen*'s first step, the Seventh Circuit looked to "the 'plain text' of the Second Amendment to see whether the assault weapons and large-capacity magazines . . . fall within the scope of the 'Arms' that individual persons are entitled to keep and bear." *Id*. at 1192. The court explained that "[b]oth Supreme Court decisions and historical sources indicate that the Arms the Second Amendment is talking about are weapons in common use for self-defense," *id*., not all bearable arms. Accordingly, plaintiffs bore "the burden of showing that the weapons addressed in the [Act] are Arms that ordinary people would keep at home for purposes of self-defense, not weapons that are exclusively or predominantly useful in military service, or weapons that are not possessed for lawful purposes." *Id*. at 1194. The plaintiffs had not satisfied their burden because "assault weapons and high-capacity magazines are much more like machineguns and military-grade weaponry than they are like the many different types of firearms that are used for individual self-defense." *Id.* at 1195. In particular, the court noted, "we are not persuaded that the AR-15 is materially different from the M16," which as "*Heller* informs us[, . . .] is not protected by the Second Amendment, and therefore may be regulated or banned." *Id.* at 1197.

The court then turned to the second step of the *Bruen* analysis and concluded, as an alternative ground for affirmance, that plaintiffs had not shown a likelihood of success. *Id.* at 1198. At this step, the court explained, defendants bear the burden of showing that the restrictions are "consistent with the history and tradition of firearms regulation." *Id.* But before delving into historical analogues, the court observed "[t]here is another aspect of the *Bruen* framework, which

3

is whether the regulated weapons are 'in common use,'" but "[t]here is no consensus on whether the common-use issue belongs at *Bruen* step one or *Bruen* step two." *Id.* The court declined to decide the question because, it explained, that even if defendants bore the burden of proof, this factor was not helpful to plaintiffs. *Id.* It found this inquiry cannot be based "on numbers alone," and must instead be anchored in history and tradition. *Id.* at 1199. Otherwise, the analysis would have "anomalous consequences," as "seen in the case of the AR-15." *Id.* In 1994, the federal assault weapons ban "made civilian possession of AR-15s (among other assault weapons) unlawful," and "few civilians owned AR-15s." *Id*. But after the legislation expired, "these weapons began to occupy a more significant share of the market." *Id*. If common use were tied solely to numbers, "the federal ban would have been constitutional before 2004, but unconstitutional thereafter." *Id.* Thus, the Seventh Circuit explained, it would not base its assessment on mere numbers; instead, at *Bruen*'s second step, the government may show that a regulation is constitutional by showing it is part of the "enduring American tradition of state regulation," based on the "answers to two questions: (1) how, and (2) why, does [the] regulation 'burden a law-abiding citizen's right to armed self-defense'?" *Id*. (quoting *Bruen*).

The Seventh Circuit then found the defendants had satisfied this burden by pointing to historical regulations that both imposed comparable burdens on the Second Amendment right as the Act, and that were enacted to "advance similar purposes" as the Act. *Id.* at 1200. For example, the court found that there is a "long-standing tradition of regulating the especially dangerous weapons of the time, whether they were firearms, explosives, Bowie knives, or other like devices," in order to protect the health, safety, and welfare of the community. *Id.* at 1199.

***Bevis* Controls Here.** In *Bevis*, the Seventh Circuit considered identical statutory provisions (the Act's restrictions on assault weapons and large capacity magazines) in an identical

4

procedural posture (motion for preliminary injunction) on the same Second Amendment theories. The court considered the arguments and records from six cases—which included the *Harrel* complaint that the memorandum in support of the pending motion here copied. The evidentiary submissions Defendants filed with this Court to oppose the motion also were in the record that the Court of Appeals considered before finding preliminary injunctive relief was not warranted. *Compare* Dkt. 19-1 to 19-15 (attaching 14 exhibits to opposition brief) with *Barnett v. Raoul*, No. 23-cv-209 (S.D. Ill.), ECF No. 37-1 to 37-15 (same). Therefore, *Bevis* clearly forecloses preliminary injunctive relief. *See* Mem. Op. and Order, *Goldman v. Highland Park*, No. 22-cv-4774 (N.D. Ill. Jan. 9, 2024), ECF No. 105 (applying *Bevis* to deny a preliminary injunction motion against assault-weapons and large-capacity-magazines ordinance).

In sum, the pending motion for preliminary injunction in this case, Dkt. 5, should be denied not only for the reasons previously explained by Defendants, Dkt. 19, 24, but also because *Bevis* tells us preliminary injunctive relief is not justified. As in *Bevis*, Plaintiffs are unlikely to succeed on the merits of their Second Amendment claims: They have not shown their claims implicate the plain text; and, even if they had, Defendants have shown the Act is consistent with the history and tradition of firearms regulation. The motion should be denied.

Dated: January 11, 2024                  Respectfully submitted,

KWAME RAOUL
*Attorney General of Illinois*

/s/ Kathryn Hunt Muse

Kathryn Hunt Muse
Office of the Attorney General
115 S. LaSalle Street
Chicago, IL 60603
(312) 814-3000
*Counsel for Defendants*

5